# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**DALE WALDEN,**

                **Plaintiff,**

**-vs-**                                                                             Case No. 6:08-cv-107-Orl-DAB

**COMMISSIONER OF SOCIAL SECURITY,**

                **Defendant.**

_____

# Memorandum & Opinion

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying his claim for Disability Insurance Benefits (DIB) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument was requested and was held on January 21, 2009.

For the reasons that follow, the decision of the Commissioner is **affirmed.**

## I. BACKGROUND

### A. Procedural History

Plaintiff filed for a period of disability and disability insurance benefits on June 18, 2004. R. 44-46. He alleged an onset of disability on April 28, 2004, due to quadruple cardiac by-pass, and

second possible heart attack in August 2006, causing shortness of breath, exhaustion, restrictions in movement, and fatigue. R. 14. His application was denied initially and upon reconsideration. R. 33-34. Plaintiff requested a hearing, which was held on September 12, 2006, before Administrative Law Judge William H. Greer (hereinafter referred to as "ALJ"). R. 27. In a decision dated January 23, 2007, the ALJ found Plaintiff not disabled as defined under the Act through the date of his decision. R. 18-27. Plaintiff timely filed a Request for Review of the ALJ's decision, which the Appeals Council denied on November 16, 2007. R. 5-9, 14-16. Plaintiff filed this action for judicial review on January 22, 2008. Doc. No. 1.

**B.     Medical History and Findings Summary**

Plaintiff was forty-eight years old at the time of the January 2007 hearing decision (R. 44) and he had a twelfth grade education through G.E.D. testing. R. 60. He had past relevant work as a trucker, mechanic, and a logger. R. 75.

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of shortness of breath, exhaustion, restrictions in movement, and fatigue due to quadruple cardiac by-pass, and heart problems. R. 14, 33-34. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from coronary artery disease, status post coronary artery bypass grafting, which was a "severe" medically determinable impairment, but not an impairment severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 23, Findings 3 & 4. The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform a limited range of light work, as he could lift and carry twenty pounds occasionally and ten pounds frequently; stand or walk for six hours per eight-hour workday and sit eight hours per workday, with certain limitations. R. 23-24, Finding 5.

In making this determination, the ALJ found that Plaintiff's allegations regarding his limitations were not entirely credible. R. 24. Based upon Plaintiff's RFC, the ALJ determined that Plaintiff could not perform past relevant work as a diesel truck mechanic. R. 25, Finding 6. Considering Plaintiff's vocational profile and RFC, and based on the testimony of the vocational expert (VE), the ALJ concluded that Plaintiff could perform work existing in significant numbers in the national economy. R. 26, Finding 10. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 27, Finding 11.

Plaintiff now asserts two points of error. First, Plaintiff contends the ALJ erred in evaluating his credibility. Second, he argues that the ALJ erred by relying on an improper hypothetical to the vocational expert (VE) which excluded Plaintiff's non-exertional impairments. For the reasons that follow, the decision of the Commissioner is **AFFIRMED**.

## II. STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995)(citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite his impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d).

## III. ANALYSIS

### A. Pain and credibility.

Plaintiff asserts that the ALJ erred in evaluating his non-exertional limitations due to his coronary medical issues, including shortness of breath and fatigue. Doc. No. 10 at 11. He contends that the record demonstrates his credibility and that the ALJ failed to provide adequate and specific reasons for discrediting his complaints. The Commissioner responds that the ALJ properly considered and analyzed Plaintiff's subjective complaints of pain and other symptoms. R. 24-25.

Although the ALJ did not refer to the Eleventh Circuit's pain standard as such, he clearly was aware of the governing standards for evaluating subjective complaints because he cited the applicable regulations and Social Security Rulings ("SSR") 96-4p and 96-7p. R. 24. *See Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002) (per curiam) (ALJ properly applied the Eleventh Circuit pain standard even though he did not "cite or refer to the language of the three-part test" as "his findings and discussion indicate that the standard was applied"). Moreover, the ALJ complied with those standards. He obviously determined that Plaintiff had an objective medical condition that could give rise to the alleged symptoms, because otherwise the ALJ would not be required to assess the credibility of the alleged complaints.

Having concluded that he had to make a credibility determination of Plaintiff's subjective complaints, the ALJ plainly recognized that he had to articulate a reasonable basis for his determination. Immediately after discussing Plaintiff's RFC, the ALJ thoroughly discussed Plaintiff's cardiac treatment history and objective medical test results in exacting detail:

> At the hearing, the claimant testified that he suffers from a previous heart attack with shortness of breath. On the other hand, he also testified that he has no side effects from his medications, and he is able to drives [sic], cook, wash dishes, clean and grocery shop. In addition, since his alleged onset date, the claimant has worked on a part-time basis, ten to fourteen hours per week, as a sweeper and cleaner. He also occasionally performed towing work at this job. And after considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.
>
> The claimant obviously suffers from coronary artery disease, but the medical evidence and his testimony indicate that he can perform some work activity. For example, the claimant was admitted to the hospital on April 30, 2004 with symptoms of unstable angina. The claimant was diagnosed with an acute myocardial infarction and a cardiac catheterization revealed complex disease in his left anterior descending and first diagonal branch with 99% stenosis in his posterior descending artery and mild anterior wall hypokinesis.

-5-

The claimant was transferred to another hospital on May 2, 2004, where he underwent four coronary artery bypass grafts. William H. Johnson, M.D., then determined that the claimant was doing well following his surgery, and he was discharged on May 8 with a diagnosis of severe three-vessel coronary occlusive disease. Dr. Johnson again found the claimant to be doing well on May 27, 2004. Robert C. Bianco, M.D., noted that the claimant complained of occasional palpitations on June 4, 2004. However, on exam, his heart had a regular rate and rhythm with a normal S1 and S2 and no murmur, rub or gallop.

Jack E. Pulwers, Jr., M.D., examined the claimant on December 10, 2004, for a disability examination. The claimant complained of shortness of breath with exertion and palpitations, but he was able to walk a hundred and twenty-five feet from the parking lot to the doctor's office. He denied any peripheral edema in his lower extremities, as well. On exam, the claimant had some chest wall tenderness, but his heart sounds were regular. His extremities had no edema, and his joints had no crepitus or effusion. He had full grip strength and extremity strength, as well.

The claimant returned to Dr. Bianco on January 18, 2005, noting that he was doing well, with no particular complaints. His physical examination was also again negative, and Dr. Bianco ordered a stress thallium and echocardiogram before helping the claimant with seeking disability. And, on January 25, 2005, Dr. Bianco noted that the stress test revealed fair exercise tolerance. The test was also negative for exercise induced myocardial ischemia and the claimant had preserved left ventricular systolic function with an ejection fraction of 68%.

The claimant visited Ali Tutar, M.D., on December 7, 2005, complaining of atypical chest pain and shortness of breath. However, his physical and cardiovascular examinations were again essentially unremarkable. Dr. Tutar then ordered an echocardiogram. And, on December 20, 2005, the echocardiogram revealed only slight left atrial enlargement, normal left ventricular function and trivial mitral regurgitation and tricuspid regurgitation. Dr. Tutar then performed another unremarkable physical examination on January 12, 2006. On April 26, 2006, Dr. Tutar noted that the claimant did not wish to undergo a transesophageal echocardiography to rule out a patent foramen ovale[1]. The claimant also denied any dizziness, syncope, chest pain, heart burn and dyspnea on exertion.

The claimant then entered the hospital due to chest pain on August 20, 2006. However, a myocardial infarction was ruled out. An echocardiogram showed only mild tricuspid insufficiency and some pericardial effusion with normal left ventricular

---

[1] A patent foramen ovale (PFO) is a defect in the septum (wall) between the two upper (atrial) chambers of the heart. Specifically, the defect is an incomplete closure of the atrial septum that results in the creation of a flap or a valve-like opening in the atrial septal wall. http://my.clevelandclinic.org/disorders/patent_foramen_ovale_pfo/hic_patent_foramen_ovale_pfo.aspx

systolic function and an ejection fraction of 60%. The claimant returned to Dr. Tutar on October 11, 2006, for a follow-up of his hospitalization. He denied any shortness of breath or dizziness on exertion at that time. He also had a regular rate and rhythm, normal S1 and S2, no S3 or S4, and no murmur on exam.

As for the opinion evidence, one Disability Determination Services' physician found the claimant capable of performing an extremely wide range of medium work activities, and another found him capable of performing a full range of medium work activities. And, the undersigned finds these opinions to be essentially consistent with the objective medical evidence, particularly the claimant's catheterizations, stress tests and echocardiograms. However, when giving the claimant the full benefit of the doubt, the undersigned finds that the can only perform light work activities. He can also only perform occasional postural activities to prevent exacerbation of his symptoms, as well as a need to avoid some environmental conditions that could worsen his cardiovascular condition.

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

In this case, the ALJ cited specific medical testing and physical examination results, and Plaintiff's reports to his doctors, in discrediting Plaintiff's subjective complaints of fatigue and palpitations listed at the hearing. Plaintiff said in responding to SSA forms that he could only "sit one hour, stand 30 minutes, can't lift more than 8 lbs., can't reach." R. 54. Plaintiff testified at the September 12, 2006 hearing that he had shortness of breadth and needed to sit down when fatigued; he had difficulty working a full day, and in the heat, had palpitations every day and had problems with stress; he was only working part-time and was allowed to sit for period or times when fatigued at work. R 391-394. Plaintiff also reported to Jack E. Pulwers, M.D., the consulting examiner ("CE")

on December 10, 2004 (about six months after surgery), that he was experiencing shortness of breath, dyspnea on exertion at a quarter mile, left-sided chest pain that did not radiate, and throbbing. R. 106. He was trying to work "three hours a day but [was] having difficulty due to troubles with heavy lifting. R. 107. Plaintiff contends that he consistently complained of shortness of breadth and fatigue from his heart condition and that he credibly reported these symptoms to his doctors and at the hospital.

However, as the ALJ noted, in the reports from Ali Tutar, M.D., in December 2005 and January 2006, Plaintiff's physical and cardiovascular examinations were unremarkable, and an echocardiogram revealed only slight left atrial enlargement, normal left ventricular function and trivial mitral regurgitation and tricuspid regurgitation. R. 343 (palpitations denied), 347-48, 350-52. On April 26, 2006, Dr. Tutar noted that the claimant did not wish to undergo a transesophageal echocardiography to rule out a patent foramen ovale, and Dr. Tutar's notes show Plaintiff denied any dizziness, syncope, chest pain, heart burn and dyspnea on exertion. R. 341-42.

Even when Plaintiff was hospitalized with chest pain on August 20, 2006, myocardial infarction was *ruled out* – not the cause, as Plaintiff argues (Doc. No. 10 at 11) – and an echocardiogram showed only mild tricuspid insufficiency and some pericardial effusion with normal left ventricular systolic function and an ejection fraction of 60%. R. 332. A chest diagnostic image reported stable chest with no evidence of active disease. R. 328. At the follow-up evaluation with Dr. Tutar on October 11, 2006, Plaintiff denied any shortness of breath or dizziness on exertion at that time; the physical examination showed he had a regular rate and rhythm, normal S1 and S2, no S3 or S4, and no murmur on exam. R. 339. In records from Dr. Tutar submitted to the Appeals Council, Dr. Tutar noted Plaintiff denied having shortness of breath, dyspnea on exertion, chest pain or chest discomfort. R. 379. Although Plaintiff also told the CE that he quit smoking in May 2004 (but had

been a 2 pack a day smoker for 25 years - R. 107), by August 2006, the medical reports show that Plaintiff was smoking 1.5 packs per day again (R. 326) although he denied smoking to Dr. Tutar in December 2005. R. 347. In January 2007, Dr. Tutar gave Plaintiff a prescription/treatment to stop smoking. R. 380. The Court also notes that when Plaintiff was admitted to the Hospital on August 17, 2006, the Emergency Room physician, Dr. Harjot S. Kahlon, noted Plaintiff's "chronic nicotine dependence" and "noncompliance with medication." R. 325.

The ALJ's discounting of Plaintiff's credibility in this case was properly based on inconsistencies between Plaintiff's stated limitations and the objective medical examination and results, as well as inconsistencies between his statements and his activities of daily living. These are factors the ALJ is directed to consider, 20 C.F.R. §§ 404.1529; 416.929, and the ALJ's determination was based on substantial evidence.

**B. Whether the ALJ's hypothetical included all of Plaintiff's impairments**

Plaintiff contends that the ALJ's finding that Plaintiff could perform light[2] or sedentary work, based on the vocational expert's testimony, was not supported by substantial evidence and Plaintiff should have been found disabled. Doc. No. 10 at 16-17. Plaintiff contends the ALJ erred in failing to include Plaintiff's asserted non-exertional limitations of shortness of breath and fatigue and if these non-exertional restrictions were credible, then the ALJ failed to properly include these limitations in the hypothetical to the VE. Doc. No. 10 at 16. The Commissioner contends that the ALJ properly questioned and relied on the testimony of the VE.

---

[2]Plaintiff contends that the ALJ included limitations for medium work, which he did not. *See* R. 396 (lift 20 pounds occasionally, 10 pounds frequently, six hours standing and walking, eight hours sitting).

At step four of the five-step sequential evaluation process, the ALJ must determine whether or not the claimant is able to return to his or her past relevant work. If the claimant is found to be able to perform the duties of her past relevant work, then he or she is considered not disabled and therefore ineligible for benefits. The claimant bears the burden of proving the inability to perform his or her previous work. *Lucas v. Sullivan*, 918 F.2d 1567, 1571 (11th Cir. 1990). The claimant must show the inability to do the type of work performed in the past, not merely the specific job he or she held. *Jackson v. Bowen*, 801 F.2d 1291, 1293 (11th Cir. 1986). The ALJ must consider all of the duties of the past work and evaluate the claimant's ability to perform those duties in spite of the impairments. *Lucas*, 918 F.2d at 1574 n. 3.

At the hearing in this case, the ALJ asked the VE to assume the hypothetical individual could perform light work with certain exertional (occasional bending, stooping crawling, stairs, crouching, and kneeling) and non-exertional limitations: no concentrated or excessive exposure to dust, fumes or extremes in temperature or humidity. R. 396. The VE responded that the individual could perform work as an apparel spot checker (30,000 jobs in the nation); office helper (100,000 jobs in nation); and cashier II (965,000 jobs in the nation). R. 397. The ALJ also asked the VE to assume Plaintiff could perform work consistent with the sedentary level (two hours standing and walking, weight of ten pounds occasionally and five pounds frequently) and with the same limitations. The VE testified that Plaintiff could work as an assembler (45,000 jobs in nation); beverage order clerk (40,000 jobs in nation) and surveillance system monitor (55,000 jobs in nation). R. 397-98.

As the Court determined previously, the ALJ properly determined that Plaintiff's non-exertional limitations were not entirely credible. Thus, the ALJ properly excluded those non-

exertional limitations from the hypothetical to the VE. Accordingly, the ALJ's decision was based on substantial evidence.

## IV. CONCLUSION

The record shows that Plaintiff suffers considerably from his impairments and cannot return to his past relevant work as a diesel truck mechanic. The ALJ was aware and considered the extent of Plaintiff's impairments as reflected in the medical record and whether he could find other work in the economy at a light or sedentary level. *See* R. 399. For the reasons set forth above, the ALJ's decision is consistent with the requirements of law and is supported by substantial evidence. Accordingly, the Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on January 23, 2009.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record